IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **BRADY MARKETING COMPANY INC.**, a California corporation, | No. 3:16-cv-1878-MO |
| Plaintiff, | OPINION AND ORDER AWARDING ATTORNEY FEES |
| v. | |
| **KAI U.S.A. LTD.**, an Oregon corporation, | |
| Defendant. | |

**MOSMAN, J.,**

This matter comes before on Defendant Kai U.S.A. Ltd.'s Motion for Attorney Fees [105] and Bill of Costs [108]. Kai seeks $255,818.50 in attorney fees and $16,410.31 in costs.

## BACKGROUND

Plaintiff Brady Marketing Company, Inc. sued Kai after Kai terminated the parties' agreement. First Am. Compl. [55]. After oral argument, I granted summary judgment to Kai on all of Brady's claims. Minutes [102]. I thereafter dismissed Kai's counterclaim for failure to prosecute. Order [129]. Judgment was entered. Judgment [130].

1

**DISCUSSION**

## I. Deferral

Brady requests that I defer Kai's attorney fees request until after appeal. In support, Brady cites cases from other circuits. The Ninth Circuit, however, "encourages deciding fee applications while an appeal is pending." *League of Wilderness Defenders/Blue Mountains Biodiversity Project v. U.S. Forest Serv.*, No. 3:10-CV-01397-SI, 2014 WL 1386367, at *1 (D. Or. April 9, 2014) (citing *Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955, 957 (9th Cir. 1983)). Provided no reason to depart from the usual course, I decline to defer the motion.

## II. Entitlement

Brady does not dispute that Kai is entitled to attorney fees. Kai prevailed on all of Brady's claims at summary judgment. Kai is therefore entitled to attorney fees on Brady's breach of contract and reformation claims under the parties' agreement. *See* Robinson Decl. [86], Ex. 16 at 9. California's Independent Wholesale Sales Representative Contractual Relations Act entitles Kai to attorney fees on Brady's claim under that act. Cal. Civ. Code § 1738.16.

## III. Amount

Oregon law governs the award of attorney fees. *Northon v. Rule*, 637 F.3d 937, 938 (9th Cir. 2011) ("State laws awarding attorneys' fees are generally considered to be substantive laws under the Erie doctrine ...."). Oregon courts generally award attorney fees based on the lodestar method, by which courts multiply the reasonable number of hours spent on the case by a reasonable hourly rate. *See Strawn v. Farmers Ins. Co. of Or.*, 297 P.3d 439, 447–48 (Or. 2013). The lodestar may be adjusted based on the factors specified in O.R.S. § 20.075. *Alexander Mfg., Inc. Emp. Stock Ownership & Tr. v. Ill. Union Ins. Co.*, 688 F. Supp. 2d 1170, 1181 (D. Or. 2010). O.R.S. § 20.075 requires courts to undertake a two-part inquiry when assessing the

amount of attorney fees to be awarded in a case such as this one where attorney fees are required by statute. O.R.S. § 20.075. First, the Court must consider:

> (a) The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.
> (b) The objective reasonableness of the claims and defenses asserted by the parties.
> (c) The extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases.
> (d) The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.
> (e) The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.
> (f) The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.
> (g) The amount that the court has awarded as a prevailing party fee under O.R.S. 20.190.
> (h) Such other factors as the court may consider appropriate under the circumstances of the case.

O.R.S. § 20.075(1). Second, the Court must consider:

> (a) The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services.
> (b) The likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases.
> (c) The fee customarily charged in the locality for similar legal services.
> (d) The amount involved in the controversy and the results obtained.
> (e) The time limitations imposed by the client or the circumstances of the case.
> (f) The nature and length of the attorney's professional relationship with the client.
> (g) The experience, reputation and ability of the attorney performing the services.
> (h) Whether the fee of the attorney is fixed or contingent.

O.R.S. § 20.075(2).

I have considered these factors as they apply to this case. Most do not weigh in either party's favor. Section 20.075(1)(b) does weigh in Kai's favor because Brady failed to support its claim for post-termination commission payments with any evidence of an unpaid commission, and because Brady filed the case in California despite the agreement's forum selection clause. *See* Tr. [112] at 47; Order [30]. But the weight of the factor is reduced somewhat because Kai

3

brought and then abandoned a counterclaim after some discovery. *See* Order [129]. Section 20.075(2)(f) also weighs somewhat in Kai's favor because the law firm it employed in this case, Davis Wright Tremaine LLP ("DWT"), has represented Kai since 1998 in litigation and non-litigation matters. Robinson Decl. [107] at 5. And Section 20.075(2)(d) also weighs in favor of Kai due to the large damages Brady sought and because Kai achieved summary judgment on all of Brady's claims. First Am. Compl. [55].; Order [30].

On the whole, the factors do not warrant an adjustment to the usual lodestar calculation. Thus, my analysis will focus on whether Kai's requested hourly rates and hours spent and are reasonable. Kai requests the following hours and rates:

| **Person** | **Hours** | **Hourly Rate** | **Amount** |
|---|---|---|---|
| Blake Robinson | 350.1 | $395-440 | $148,520.50 |
| Kerry Shea | 87.2 | $680-730 | $59,556.00 |
| Loring Rose | 43.8 | $470 | $20,586.00 |
| John McGrory | 32.7 | $565-620 | $19,260.00 |
| Erika Buck | 31.1 | $235 | $7,308.50 |
| Jennifer Davis | 2.5 | $235 | $587.50 |
| | | **TOTAL** | $255,818.50 |

As an initial matter, I find that Kai has produced adequate documentation of its billing records. Brady contends that Kai failed to produce "any contemporaneous billing records to support or justify its claimed fees" and contends that Kai's billing record (Robinson Decl. [107] Ex. 1) is inadmissible hearsay. But Kai's spreadsheet was attached to the sworn declaration of Blake Robinson, which suffices as a signed and detailed statement of the amount of attorney fees. *See* Or. R. Civ. P. 68 C(4). Brady argues that *Muniz v. United Parcel Serv., Inc.*, 738 F.3d 214 (9th Cir. 2013) requires something more, but that decision cited and applied California's requirements for attorney fee declarations. 738 F.3d at 222 (citing *Mardirossian & Assocs., Inc. v. Ersoff*, 62 Cal. Rptr. 3d 665, 674–75 (Cal. Ct. App. 2007)). As Kai points out, Oregon's Uniform Trial Court Rules contemplate, and the Oregon Court of Appeals has approved, a sworn

declaration that details the attorney fees request on behalf of multiple attorneys, like the one Kai submitted in this case. *See* UTCR 5.080; *Sherwood Park Bus. Ctr., LLC v. Taggart*, 341 P.3d 96, 105 (Or. Ct. App. 2014).

**A. Hourly rates**

"As a benchmark for comparing an attorney's billing rate with the fee customarily charged in the locality, this Court uses the most recent Oregon State Bar Economic Survey." *Precision Seed Cleaners v. Country Mut. Ins. Co.*, 976 F. Supp. 2d 1228, 1244 (D. Or. 2013); *see* Oregon State Bar 2017 Economic Survey (available at https://www.osbar.org/_docs/resources/ Econsurveys/17EconomicSurvey.pdf) [hereinafter "OSB Survey"]. "If the rate requested exceeds the average rate reported in the OSB Survey, the burden is on the prevailing party to justify that higher rate. Even when such justification is present, the court usually limits the hourly rate to the 75th percentile of the OSB Survey." *Prison Legal News v. Umatilla Cty.*, No. 2:12-CV-01101-SU, 2013 WL 2156471, at *4 (D. Or. May 16, 2013) (citation omitted).

**1. Blake Robinson**

Mr. Robinson is an associate at DWT with nine years' experience. Robinson Decl. [107] at 3; Gowell Decl. [106] at 2. He seeks $395 per hour for work performed in 2016, $420 for 2017, and $440 for 2018. According to the OSB Survey, attorneys in Portland with 7–9 years of experience billed an hourly rate of $340 at the 75th percentile, and $400 at the 95th percentile. OSB Survey at 39. Kai argues that the higher rate is justified because Mr. Robinson handled tasks in the litigation that would typically be performed by more experienced attorneys. For example, Mr. Robinson took and defended key depositions, drafted the briefings, and argued the summary judgment motion. Robinson Decl. [107] at 4. By comparison, a partner with forty years' experience performed many of those tasks for Brady. Robinson Decl. [107] at 4. Kai also

contends that Mr. Robinson's qualifications set him apart from other attorneys, that attorneys at similar law firms charge comparable rates, and that Kai's requested rate is lower than what it actually paid for Mr. Robinson.

Brady argues that I should award the 75th percentile rate. While that is the usual practice of this district, *Prison Legal News*, 2013 WL 2156471, at *4, I find that Mr. Robinson's requested rates are reasonable in the light of the type of tasks he handled and the nature of this litigation. *See* O.R.S. § 20.075(2).

### 2. Kerry Shea

Ms. Shea is a partner at DWT with 28 years' experience. Robinson Decl. [107] at 4; Gowell Decl. [106] at 2. Ms. Shea seeks $680 per hour for work performed in 2016, $710 in 2017, and $730 in 2018. She works in San Francisco. Robinson Decl. [107] at 4. Kai argues that these rates are appropriate because California courts have awarded similar hourly rates to similarly experienced attorneys. *See, e.g.*, *Rosenfeld v. U.S. Dept. of Justice*, 904 F. Supp. 2d 988, 1002-04 (N.D. Cal. 2012) (approving $700 hourly rate for San Francisco attorney with 28 years' experience); *Rodriguez v. County of Los Angeles*, 96 F. Supp. 3d 1012, 1023 (C.D. Cal. 2014) (approving $700 hourly rate for attorney with 28 years' experience).

Brady argues that the Portland 75th percentile rate is appropriate. I disagree. Brady filed the case in California, so it was appropriate for Kai to hire local counsel to handle the litigation before Kai moved for transfer pursuant to the agreement's forum selection clause. *See* Robinson Decl. [86], Ex. 16 at 3. Oregon law looks to the rate "customarily charged in the locality for similar legal services." O.R.S. § 20.075(2)(c). Brady does not argue that Ms. Shea's requested rates are unreasonable for attorneys of Ms. Shea's experience in California. I find Ms. Shea's rate reasonable.

### 3. Loring Rose

Mr. Rose is an associate in Los Angeles with 10 years' experience. Robinson Decl. [107] at 4; Gowell Decl. [106] at 2. Mr. Rose requests $470 for work performed in 2016. Gowell Decl. [106] at 2. Like Ms. Shea, Mr. Rose practices in California. Kai cites cases where California courts have awarded similar hourly rates to similarly experienced attorneys. *See, e.g.*, *Gatdula v. CRST Int., Inc.*, CV 11-001285, 2015 WL 12697656, at *11 (C.D. Cal. Aug. 26, 2015) (awarding hourly rate of $550 to Los Angeles attorney with 10 years' experience); *Browne v. American Honda Motor Co., Inc.*, CV 09-06750, 2010 WL 9499073, at *7 (C.D. Cal. Oct. 5, 2010) (awarding hourly rate of $450 for attorney with three years' experience).

Again, Brady argues that Portland rates should apply, but does not argue that Mr. Rose's requested rates are unreasonable for attorneys of his experience in California. I find Mr. Rose's requested rates reasonable.

### 4. John McGrory

Mr. McGrory is a partner at DWT with 36 years' experience. Robinson Decl. [107] at 5; Gowell Decl. [106] at 2–3. Mr. McGrory seeks $565 per hour for work performed in 2016, $590 in 2017, and $620 in 2018. According to the OSB Survey, attorneys in Portland with over 30 years of experience billed an hourly rate of $495 at the 75th percentile, and $610 at the 95th percentile. OSB Survey at 40. Kai contends that the higher rates are appropriate because Mr. McGrory is a "premier litigation attorney" in Oregon, because his rates are commensurate with attorneys of his experience at other large firms in Portland, and because his requested rates are lower than those Kai actually paid.

Brady argues that I should award only the 75th percentile rate. While I do not disagree with Kai's description of Mr. McGrory, the reasons preferred in support of the increased rate do

7

not justify a departure from the usual rule. *See Prison Legal News*, 2013 WL 2156471, at *4 ("[E]ven when such justification is present, the court usually limits the hourly rate to the 75th percentile."). Kai requests that I increase the OSB Survey rates, which reflect 2016 rates, by 5% for 2017 and another 5% for 2018 in order to account for inflation. Accordingly, I award $495 per hour for work Mr. McGrory performed in 2016; $520 for 2017; and $546 for 2018.[1] That adjustment reduces the total requested for Mr. McGrory's work from $19,260 to $16,957.40, a $2,302.60 reduction.

### 5. Erika Buck and Jennifer Davis

Ms. Buck and Ms. Davis are paralegals with 18 years of experience each. Robinson Decl. [107] at 5. Kai requests $235 per hour for the work they performed.

"Although the OSB Economic Surveys contain no information regarding paralegal billing rates, Judges in this District have noted that a reasonable hourly rate for a paralegal should not exceed that of a first year associate." *Chatelain v. Country Mutual Insurance Co.*, No. 3:15-CV-02013, 2017 WL 6663901, at *8 (D. Or. Dec. 29, 2017) (internal citation omitted). According to the OSB 2017 Survey, the median hourly rate for a Portland attorney with 0 to 3 years' experience in 2016 was $235. OSB Survey at 38. Since Ms. Buck and Ms. Davis have 18 years of experience, I find this rate reasonable.

## B. Hours spent

Brady raises two objections to the hours Kai requests.

### 1. Inadequate descriptions

Brady argues that the court should not award any fees for the hours "unsupported by a description of the task and time worked." Relatedly, Brady notes that Kai's spreadsheet "reflects

---

[1] Kai requests fees for 5.4 hours that Mr. McGrory spent in 2016, 23.9 hours in 2017, and 3.4 hours in 2018.

numerous vague entries referring to emails or phone calls with a client or counsel without any further description."

Kai argues that Brady's objection fails because it failed to identify the specific records it objects to.

I agree that Brady should have identified the record it objects to. But in the end, it is Kai's burden to prove the reasonableness of the fee amount that it requests. *Strawn*, 297 P.3d at 449 (citing *Hillsboro v. Maint. & Const. Serv.*, 523 P.2d 1036 (Or. 1974)) (where opposing party objects to attorney fee request, burden of proving reasonableness of fees rests on party seeking them).

Nevertheless, upon review I did not identify records "unsupported by a description of the task and time worked." I also find adequate Kai's email and phone call entries. A few entries do not indicate the subject of the phone call to the client, but the subject can be inferred from other entries made the same day. Furthermore, it appears Kai complied with the rule against double-billing for intra-counsel communications. *See Precision Seed Cleaners*, 976 F. Supp. 2d at 1252 ("Generally, when attorneys hold a telephone or personal conference, good 'billing judgment' mandates that only one attorney should bill that conference to the client, not both attorneys.") (citation omitted); *see, e.g.*, Robinson Decl. [107] Ex. 1 at 5. Thus, I decline to reduce any of Kai's hours on the basis that the hours were inadequately described.

   **2. Counterclaim**

In its initial request, Kai sought fees for time it spent litigating the counterclaim that it abandoned during discovery. Brady argues, and Kai agrees, that Kai should not recover for that time. But the parties disagree as to the amount of the appropriate reduction. Brady asks that I

reduce by 35% the amount that Kai requested before it abandoned its counterclaim (by Brady's calculation, a reduction of $29,750).

Kai argues that an appropriate reduction is $2,470, or six hours of Mr. Robinson's time at the requested rates. Kai notes that it did not request fees for the hours Ms. Shea spent on the counterclaim. Kai further emphasizes that it allocated most of its time to defending Brady's claim for $14 million in damages, rather than Kai's $40,000 counterclaim. Indeed, the counterclaim was the focus of only four of Kai's requests for production, six of Brady's requests, only one of 21 interrogatories, and a just few questions to one of the deponents. Robinson Decl. [86] Ex. 1, Ex. 2; Robinson Decl. [107] ¶ 6.

Because Kai did not request fees for the time Ms. Shea spent on the counterclaim, I find Kai's suggested $2,470 reduction reasonable.

## IV. Costs

The parties' agreement also allows the prevailing party to recover "reasonable costs." *See* Robinson Decl. [86], Ex. 15 ¶ 12. Unlike attorney fees, costs are governed by federal law. 28 U.S.C. § 1920; *Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1022 (9th Cir. 2003). Kai seeks $16,410.31 in costs, which consist of: (1) costs paid to third-party vendor Streamline Imaging LLC for imaging and processing the discovery documents in this case, (2) deposition transcripts and video recordings, (3) court reporter and videographer fees for Mr. Brady's deposition, and (4) a CourtCall fee for a court hearing in California. Bill of Costs [108] at 3. These costs are at arguably recoverable under 28 U.S.C. § 1920, and Brady does not contest Kai's requested costs. *See* 28 U.S.C. § 1920 (allowing recovery for printed or electronically recorded transcripts, printing, copies, and fees of the clerk). I find the costs reasonable.

//

## CONCLUSION

Kai's Motion for Attorney Fees [105] is GRANTED in part and DENIED in part and its Bill of Costs [108] is GRANTED. I reduce Kai's request by $2,302.60 to account for Mr. McGrory's reduced rates and by $2,470 to account for time spent on the abandoned counterclaim. I award to Kai $251,045.90 in attorney fees and $16,410.31 in costs.

Date: __11__ of July, 2018

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
CHIEF U.S. DISTRICT JUDGE